UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CONTINENTAL INS. CO., *et al.*,

            Plaintiffs,

v.                                                                                          5:07-CV-0244
                                                                                              (GTS/GJD)
COYNE INT'L ENTER. CORP., *et al.*,

            Defendants.
_____

APPEARANCES:                                                              OF COUNSEL:

BRESSLER, AMERY & ROSS, P.C.                                  SAMUEL J. THOMAS, ESQ.
  Counsel for Plaintiffs                                                  SEAN CALLAHAN, ESQ.
325 Columbia Turnpike
Florham Park, New Jersey 07932

BOND, SCHOENECK & KING, PLLC                              BRIAN J. BUTLER, ESQ.
  Counsel for Defendants
One Lincoln center
Syracuse, New York 13202

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court in this breach-of-contract action filed by Continental Insurance Company, Transportation Insurance Company, and CNA Claimplus, Inc., ("Plaintiffs") is a motion for partial summary judgment filed by Coyne International Enterprises, Inc., d/b/a Textile Services, Ohio Garment Rental, Inc., Central Uniform Service, Inc., Blue Ridge Textile Manufacturing, Inc., and Buck Point Camp Club, LLC ("Defendants"). (Dkt. No. 34.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.    BACKGROUND**

    **A.    Plaintiffs' Claims**

Generally, liberally construed, Plaintiffs' Complaint alleges that Defendants have refused to remit payment on several premiums, taxes, and claim service fees owed to Plaintiffs under a series of insurance contracts entered into by the parties. (*See generally* Dkt. No. 1 [Plfs.' Compl.].) Specifically, Plaintiffs' Complaint alleges as follows: (1) Defendants have failed, refused and continue to refuse to pay a $17,599 balance owed to Plaintiffs under a Claim Service Contract ("CSC"); (2) Defendants have failed, refused and continue to refuse to pay a $1,878,004 balance owed to Plaintiffs under Retrospective Premium Insurance Programs ("the Retro Policies"); (3) Defendants have failed, refused and continue to refuse to pay the $98,919 balance owed to Plaintiffs under policies of workers' compensation, general liability and automobile insurance policies ("the Guaranteed Cost Policies"); (4) Defendants have been unjustly enriched based upon their refusal to pay Plaintiffs for insurance coverage and related services provided; and (5) Defendants have failed, refused, and continue to refuse to remit payment to Plaintiffs based upon accounts stated between the parties. (*Id*.)

Familiarity with the factual allegations supporting the claims in Plaintiffs' Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id*.)

    **B.    Undisputed Material Facts**

The following material facts are undisputed by the parties. (*Compare* Dkt. No. 34, Attach. 30 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 38, Attach. 1 [Plfs.' Rule 7.1 Response].)

Plaintiffs (the insurer) and Defendants (the insured) entered into several contracts for workers' compensation insurance, general liability insurance, and business automobile insurance

over a period of time.  More specifically, Defendants purchased two types of policies that are relevant to this matter: (1) the Retro Policies; and (2) the Guaranteed Cost Policies.[1]

With regard to the Retro Policies,[2] each of the Retro Policies contains a Retrospective Premium Endorsement (the "Retro Endorsement") that sets forth the terms of the retrospective premium calculation and payment.  Under the terms of the Retro Endorsement, the retrospective premium is defined as the sum of "(1) basic premium, (2) converted losses, (3) and taxes, plus (4) the excess loss premium and retrospective development premium elective elements if [Defendants] chose them."  (In addition, the retrospective premium charged by Plaintiffs is subject to a stated minimum and maximum amount.)

Each Retro Endorsement provides that "[Plaintiffs] will calculate the retrospective premium using all loss information [they] have as of a date six months after the rating plan period ends and again annually thereafter."  Following each retrospective premium calculation, Defendants would either be entitled to a refund, or be required to pay an additional retrospective premium.  In addition, each Retro Endorsement states that "[a]fter each calculation of retrospective premium, [Defendants] will pay promptly the amount due [Plaintiffs], or [Plaintiffs] will refund the amount due [Defendants]."

With regard to the Guaranteed Cost Policies, six of the policies at issue in this action are

---

[1] The parties dispute whether Plaintiffs and Defendants entered in a CSC on March 1, 1989, pursuant to which, according to Plaintiffs, it was agreed that Plaintiffs would manage, adjust, service and pay claims submitted by Defendants, and Defendants would (1) reimburse Plaintiffs for payments issued by Plaintiffs for such claims, and (2) pay Plaintiff claim service fees.

[2] For the sake of brevity, the Court will not identify, in this Decision and Order, each policy number of the Retro Policies, but will assume the parties' familiarity with those policy numbers.

Guaranteed Cost Policies.[3]  The Guaranteed Cost Policies were subject to an audit.  Pursuant to the Guaranteed Cost Policies, if an additional premium is owed after the audit, Defendants would be billed by Plaintiffs for the additional premium and that premium would be "due and payable on notice" to Defendants.

Beginning in or around 1989, Defendants purchased the Retro Policies and Guaranteed Cost Policies through their broker, Marsh & McLennan ("Marsh").  (Marsh provided services to Defendants relating to the procurement and maintenance of insurance, including assisting Defendants in reviewing insurance policies, preparing specifications, and preparing comparisons of insurance quotes.)

On or after August 19, 2004, Ed Brewer, an employee of Defendants, received a letter from Daniel Peterson, Plaintiffs' Account Manager for Legal Collections, dated August 19, 2004. The letter of August 19, 2004, enclosed an invoice for "past due" amounts totaling $1,732,363.00 and stated that Plaintiffs had "not received payment from [Defendants] since 1998."  The invoice included unpaid premiums based on audits of the Guaranteed Cost Policies.

In addition, the letter of August 19, 2004, enclosed a document titled "[Defendants] International Outstanding Amounts" (the "Summary").  The Summary listed outstanding retrospective premiums allegedly owed by Defendants, together with the "evaluation date" for each premium calculation.  The listed premiums owed were based on audits of the Guaranteed Cost Policies, but the Summary did not identify dates when the audits occurred.

On March 8, 2007–more than six years after the audit dates that occurred on and before

---

[3]  Again, for the sake of brevity, the Court will not identify, in this Decision and Order, each policy number of the Guaranteed Cost Policies, but will assume the parties' familiarity with those policy numbers.

November 21, 2000–Plaintiffs' filed this action. Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties. (*Id.*)

      C.      **Defendants' Motion for Partial Summary Judgment**

Generally, in support of their motion for partial summary judgment, Defendants argue as follows: (1) Plaintiffs' claim based on the 1989-1990 CSC must be dismissed because Plaintiffs have failed to prove the existence of the CSC; (2) Plaintiffs' claim with respect to the premiums under the Retro Policies that became due in 1998, 1999, and 2000 must be dismissed because this claim is time barred by New York's six-year statute of limitations governing a breach-of-contract action; (3) Plaintiffs' claim with respect to the premiums under the Guaranteed Cost Policies that became due in 1998, 1999, and 2000 must be dismissed because it is also time barred by New York's six-year statute of limitations governing a breach-of-contract action; (4) Plaintiffs' claim for unjust enrichment must be dismissed because a valid, enforceable written contract existed between the parties; and (5) Plaintiffs' claim for an account stated must be dismissed because (a) any claim based on an account stated from 1998, 1999 and 2000 is time barred by New York's six-year statute of limitations, and (b) the only invoice received by Defendants from 2001 through 2006 was the invoice attached to the letter of August 19, 2004, discussed above, which was immediately rejected. (*See generally* Dkt. No. 34, Attach. 31 [Defs.' Memo. of Law].)

In response to Defendants' motion for summary judgment, Plaintiffs argue as follows: (1) summary judgment is improper because there are genuine issues of fact regarding when

Plaintiffs' causes of action began to accrue; (2) to the extent that certain claims are barred by the statute of limitations, equity prohibits applying the relevant statute of limitations; and (3) summary judgment is improper on the unjust enrichment claim because there are genuine issues of material fact as to the existence of a valid written contract. (*See generally* Dkt. No. 38 [Plfs.' Mem. of Law].)

In their reply, Defendants argue as follows: (1) Plaintiffs' claim based on the 1989-1990 CSC must be dismissed because Plaintiffs have continued to provide no legal or factual basis for their claim that this contract ever existed; (2) Plaintiffs' claim for unpaid premiums due under the Retro Policies must be dismissed because Plaintiffs concede that this claim is time barred, and because Plaintiffs have not established a basis for the application of the doctrine of equitable tolling; (3) Plaintiffs claim for unpaid premiums under the Guaranteed Cost Policies must be dismissed because Plaintiffs did not respond to Defendants' summary judgment argument with respect to this claim; (4) Plaintiffs' claim for unjust enrichment must be dismissed because there is no genuine dispute as to the validity or enforceability of the Retro Policies or the Guaranteed Cost Policies (the two policies relevant to this claim); and (5) Plaintiffs' claim for an account stated must be dismissed because Plaintiffs did not respond to Defendants' summary judgment argument with respect to this claim. (*See generally* Dkt. No. 39 [Defs.' Reply Memo. of Law].)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct

the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

      **B.**      **Legal Standards Governing Plaintiffs' Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiffs' claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (Dkt. No. 34, Attach. 31 [Defs.' Memo. of Law]; Dkt. No. 38 [Plfs.' Memo. of Law]; Dkt. No. 39 [Defs.' Reply Memo. of Law].)

**III.**    **ANALYSIS**

      **A.**      **Plaintiffs' Claim for Breach of Contract Under the Claim Service Contract**

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiffs' claim based on the 1989-1990 CSC must be dismissed because they have (assertedly) failed to provide any legal or factual basis for their claim that the 1989-1990 CSC existed.

Of course, at the summary judgment stage, the Court must construe the record evidence in the light most favorable to the nonmoving party and draw all inferences and resolve all ambiguities in that party's favor. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). Construing the record in this fashion, the Court finds that, although Plaintiffs acknowledge that they have not been able to locate the CSC, they have adduced at least some admissible record evidence from which a rational factfinder could

conclude that the CSC did in fact exist.[4]  Because Defendants argument for dismissal of Plaintiffs' claims related to the CSC is that there is no evidence that the contract exists, Defendants' motion for summary judgment with regard to this claim is denied.

### B. Plaintiffs' Claim for Breach of Contract Under the Retro Policies

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiffs' claim with respect to the premiums under the Retro Policies that became due in 1998, 1999, and 2000 must be dismissed because this claim is time barred by New York's six-year statute of limitations governing a breach-of-contract action.  Based on the current record, the Court agrees with Defendants' argument regarding the 1998 and 1999 Retro Policies, and disagrees with Defendants' argument regarding the 2000 Retro Policies.

#### 1. The 1998 and 1999 Retro Policies

The Court agrees with Defendants' argument regarding the 1998 and 1999 Retro Policies for two reasons.  First, Plaintiffs concede that the 1998 and 1999 Retro Policy Adjustments are barred by the six-year statute of limitations.  Second, Plaintiffs' argument that equity excuses the untimeliness of these claims is of no avail because, under the circumstances, the doctrine of equitable tolling does not apply for the reasons stated in Defendants' Reply Memorandum of Law.  (Dkt. No. 39, at 3-4.)

#### 2. The 2000 Retro Policy

Based on the current record, the Court rejects Defendants' argument regarding the 2000 Retro Policies.  As an initial matter, the Court acknowledges that, had Plaintiffs sent Defendants

---

[4] (Dkt. No. 38, Attach. 4, at 2 [Peterson Affid.], ¶ 4-8; Dkt. No. 38, Attach. 4, at 14-45, Attach. 5, at 1-52, Attach. 6, at 1-17 [Ex. A].)

a calculation of the amount owed pursuant to Retro Policy of the September 1, 2000, in a timely fashion, Plaintiffs' claim that Defendants failed to remit payment on this policy would be barred by the statute of limitations.  However, based on the current record, the Court finds that there is at least some admissible record evidence from which a rational factfinder could conclude that Plaintiffs did not sent Defendants an invoice for the amount owed pursuant to the September 1, 2000 Retro Policy until August 19, 2004.  (*See, e.g.*, Dkt. No. 38, Attach. 4, at 6, ¶¶ 17, 18 [Peterson Affid.].)  As a result, the Court must determine, based on the intentions of the parties and the governing legal standards, whether the statute of limitations accrues at the time of calculation of the amount owed, or at the time that payment is demanded and refused.

In reaching its conclusion the Court first turns to the language of the agreements between the parties.  In doing so, the Court is mindful of the fact that the language of the Retrospective Premium Endorsement (which includes terms of the Retro Policy calculations and payment obligations) states that "[a]fter each *calculation* of retrospective premium [Defendants] will pay promptly the amount due [Plaintiffs], or [Plaintiffs] will refund the amount due [Defendants]." (Dkt. No. 34, Attach. 25 [Brewer Decl. Exs. A-E] [emphasis added]).  At first glance, this language appears to indicate that payment is due at the time of the calculation or adjustment, not when payment is demanded and refused.  However, in his deposition testimony, Peter Merle, Defendants' claim advocate from 1989 to 2002, testified as follows:

> [T]here was no specific decision not to pay premium beyond 1997. We were trying to negotiate either a reduction in additional premium or a buyout.  It–the negotiations stopped when [Plaintiffs] let Mr. O'Krongly go.  There was no further communication.  Nobody asking for anything.  It was a void.  I mean, everybody figured that they had dodged a bullet. [Plaintiffs] w[ere] not sending bills.

(Dkt. No. 38, Attach. 3, at 24 [Ex. I].)  This testimony suggests that Defendants' subjective belief

was that they were not required to pay amounts due until after a bill reflecting the amount due was sent. Moreover, a practical interpretation of the language set forth in the Retro Premium Endorsement would suggest that Defendants must be aware of the calculation of the adjustment, and have an opportunity to dispute the calculation, before payment can be required. Finally, at least one court has made clear that "a cause of action in an insurance case accrues on the date that payment is due and has been rejected." *Potomac Ins. Co. of Ill. v. Richmond Home Needs Servs., Inc.*, 04-CV-4335, 2006 WL 2521283, at *2 (S.D.N.Y. Aug. 30, 2006) (citing *Liberty Mut. Ins. Co. v. Precision Valve Corp.*, 402 F. Supp.2d 481, 485 [S.D.N.Y. 2005] [citing *Russack v. Weinstein*, 291 A.D.2d 439, 441 [N.Y. App. Div., 2d Dept. 2002]). In other words, "[w]hat counts, for statute of limitations purposes, are the date[] that invoices were sent . . . for premiums due and [the date that the recipient of the invoices] declined to pay." *Richmond Home Needs Servs., Inc.*, 2006 WL 2521283, at *2.[5]

For all of these reasons, Defendants' motion for summary judgment with regard to

---

[5] The Court is aware that at least one court has also held that the six-year limitations period for the collection of premiums accrues at the time of the adjustment. *Transp. Ins. Co., et al. v. Star Indus., Inc.,* 01-CV-1341, 2005 WL 1801671, at *2 (E.D.N.Y. July 28, 2005) (holding that "where a workers' compensation policy provides for payment of a retrospective premium based on actual claims experience . . . the six-year statute of limitations period as applied to the collection of premiums *accrues at the time of the adjustment*.") (emphasis added). However, the Court finds that this decision does not support Defendants' argument that the statute of limitations accrues from the date of calculation for two reasons. First, it is not clear from the *Star Indus., Inc.* decision whether "adjustment" occurs when the insurer calculates the adjustment, or when the insurer notifies the insured of the adjustment. This is because, under the facts of that case, the Eastern District of New York was not required to, and therefore did not, consider this issue. Second, in reaching its conclusion that the complaint did not apply to policies prior to 1995 (which plaintiffs were not asserting), the Eastern District stated that "the complaint was filed on March 5, 2001 . . . [and] [t]he first annual adjustment for the 1992-1993 Policy was *sent* to Star on June 1, 1994." *Star Indus., Inc.,* 2005 WL 1801671, at *3 (emphasis added) (noting also that the timely claims "were made and demanded within the six-year statute of limitations").

Plaintiffs' 2000 Retro Policy Claim is denied.

### C. Plaintiffs' Claim for Breach of Contract Under the Guaranteed Cost Policies

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiffs' claim with respect to the premiums under the Guaranteed Cost Policies that became due in 1998, 1999, and 2000 must be dismissed because it is time barred by New York's six-year statute of limitations governing a breach-of-contract action.

As an initial matter, the Court notes that, in their opposition memorandum of law, Plaintiffs failed to respond to Defendants' argument that Plaintiffs claim for breach of contract under the Guaranteed Cost Policies are barred by the statute of limitations, and Defendants are therefore entitled to a credit (to be offset against other monies owed) of $91,063. As a result, Defendants' burden with regard to the dismissal of these claims is lightened such that, in order to succeed on this request, Defendants need show only that their request has facial merit.[6] Based on their motion papers, the Court finds that Defendants have met this lightened burden. In any event, the Court finds that Defendants' argument would survive the heightened scrutiny

---

[6] *See Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their summary judgment motion, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating entitlement to the relief requested in their motion for summary judgment); *cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim); *Niles v. Nelson*, 72 F. Supp.2d 13, 22 (N.D.N.Y. 1999) (McAvoy, C.J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *Frink Am., Inc. v. Champion Road Machinery, Ltd.*, 48 F. Supp.2d 198, 209 (N.D.N.Y. 1999) (McAvoy, C.J.) ("Plaintiff does not address these claims in his opposition papers, leading the Court to conclude that it has abandoned them.") (collecting cases).

appropriate on a contested motion for the reasons stated in Defendants' memorandum of law. (Dkt. No. 34, Attach. 31, at 17-18.)

For these reasons, the Court grants Defendants' motion with regard to Plaintiffs' claim relating to the Guaranteed Cost Policies. In doing so, the Court also awards Defendants a credit of $91,063 (to be offset against any other monies found to be owed).

### D. Plaintiffs' Claim for Unjust Enrichment

As stated above in Part I.C. of this Decision and Order, Defendants seek dismissal Plaintiffs' unjust enrichment claim because this dispute arises out of a valid and enforceable written contract. In response, Plaintiffs argue that summary judgment is improper on their unjust enrichment claim because there are genuine issues of material fact as to the existence of a valid written contract. Based on the current record, the Court accepts Defendants' argument for two reasons.

First, the policies that are relevant to the current dispute are the Retro Policies and the Guaranteed Cost Policies, and the parties do not dispute the validity or enforceability of either of these policies. (*Compare* Dkt. No. 34, Attach. 30 [Defs.' Rule 7.1 Statement at ¶ 2] *with* Dkt. 38, Attach. 1 [Plfs.' Rule 7.1 Response at ¶ 2].) Second, Plaintiffs argue that the CSC and the 1997 Finance Agreement are also relevant to the interpretation of these policies, and Defendants' failure to acknowledge the existence of these agreements therefore creates a genuine issue of material fact regarding whether the language of the policies in dispute is clear and unambiguous; however, the Court finds this argument to be without merit because these agreements are not relevant to the interpretation of Defendants' payment obligations under these policies–the particular obligations that are material to Plaintiffs' unjust enrichment claim.

More specifically, with regard to the Retro Policies, the terms of the 1997 Finance Agreement do not govern Defendants' payment obligations. Instead, as stated by Plaintiffs in their Complaint, the Retro Policies and the CSC are the documents that form "the Retro Programs," and "[t]he Retro Programs provide for annual calculations of the amounts owed by Defendants to Plaintiffs for retrospective premiums, taxes and claim service fees." As a result, the Finance Agreement does not render the language of the Retro Policies regarding Defendants' payment obligations ambiguous. In addition, the CSC details how and when *claim service fees* are generated, not how and when payment of retrospective premiums are generated. (*See*, *e.g.*, Dkt. No. 38, at 23 n.6.) As a result, the CSC does not render the language of the Retro Policies regarding Defendants' payment obligations ambiguous.

For all of these reasons, Plaintiffs' claim for unjust enrichment is dismissed.

**E.     Plaintiffs' Claim for Account Stated**

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiffs' claim for an account stated should be dismissed because (a) all claims based on an account stated from 1998, 1999 and 2000 are time barred by New York's six-year statute of limitations, and (b) the only invoice received by Defendants from 2001 through 2006 was the invoice attached to the letter of August 19, 2004, discussed above, which was immediately rejected. Defendants further argue, in their reply papers, that Plaintiffs' claim for an account stated must be dismissed because Plaintiffs did not, in their response papers, respond to Defendants' above-described argument with respect to this claim.

As an initial matter, the Court notes that, in their opposition memorandum of law, Plaintiffs failed to respond to Defendants' argument. As a result, Defendants' burden with

regard to the dismissal of this account stated claim is lightened such that, in order to succeed on this request, Defendants need show only that their request has facial merit.[7] Based on their motion papers, the Court finds that Defendants have met this lightened burden. In any event, the Court finds that Defendants' argument would survive the heightened scrutiny appropriate on a contested motion for the reasons stated in Defendants' memorandum of law. (Dkt. No. 34, Attach. 31, at 19-20.)

For these reasons, the Court grants Defendants' motion with regard to Plaintiffs' claim for account stated.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 34) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiffs' following claims are **DISMISSED** with prejudice from this action:

(1) Plaintiffs' claim for breach of contract under the 1998 and 1999 Retro Policies

(2) Plaintiffs' claim for breach of contract under the Guaranteed Cost Policies

(3) Plaintiffs' claim for unjust enrichment

(4) Plaintiffs' claim for an account stated; and it is further

**ORDERED** that Plaintiffs' following claims are *not* dismissed from this action, at this time:

(1) Plaintiffs' claim for breach of contract under the claim service contract

(2) Plaintiffs' claim for breach of contract under the 2000 Retro Policy; and it is further

---

[7] *See, supra,* note 6 of this Decision and Order (citing cases).

**ORDERED** that counsel are directed to appear on **APRIL 16, 2010** at 2:30 p.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time.  If plaintiff's counsel would like to participate via telephone conference, counsel should make that request in writing. Plaintiff is further directed to forward a written settlement demand to defendants no later than April 9, 2010, and the parties are directed to engage in meaningful settlement negotiations prior to the 4/16/10 conference.

Dated:  March 30, 2010
        Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge