UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CONTINENTAL INS. CO., *et al.*,
                               Plaintiffs,

v.                                                    5:07-CV-0244
                                                      (GTS/ATB)
COYNE INT'L ENTER. CORP., *et al.*,
                               Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

BRESSLER, AMERY & ROSS, P.C.                 SAMUEL J. THOMAS, ESQ.
   Counsel for Plaintiffs                    ANGELA M. SCAFURI, ESQ.
325 Columbia Turnpike                        SEAN C. CALLAHAN, ESQ.
Florham Park, New Jersey 07932

BOND, SCHOENECK & KING, PLLC                 BRIAN J. BUTLER, ESQ.
   Counsel for Defendants                    ADAM P. MASTROLEO, ESQ.
One Lincoln center
Syracuse, New York 13202

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently pending before the Court in the above-captioned action is a motion by

Plaintiffs for reconsideration of Part III.C of the Court's Decision and Order of March 30, 2010,

which granted Defendants' request for an Order (1) dismissing Plaintiffs' breach-of-contract

claims to the extent they sought monies that became due in 1998, 1999 and 2000 under a series

of workers' compensation, general liability and automobile insurance contracts entered into by

the parties ("Guaranteed Cost Policies"), and (2) awarding Defendants a credit of $91,063 (to

offset any other monies found to be owed by Defendants in this action).  (Dkt. No. 43.)  For the

reasons set forth below, Plaintiffs' motion is denied.

## I.        RELEVANT BACKGROUND

Familiarity with Part III.C. of the Court's Decision and Order of March 30, 2010, the grounds offered by Plaintiffs in support of their motion, and the grounds offered by Defendants in opposition to that motion is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*See generally* Dkt. Nos. 41, 43-45, 46, 47.)

## II.     GOVERNING LEGAL STANDARD

Generally, a court may justifiably reconsider its previous ruling if "[1] there has been an intervening change in controlling law, [2] there is new evidence, or [3] a need is shown to correct a clear error of law or to prevent manifest injustice." *U.S. v. Sanchez*, 35 F.3d 673, 677 (2d Cir. 1994) [citations omitted]), *cert. denied*, 514, U.S. 1038 (1995); *accord*, *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.) [citations omitted], *cert. denied*, 464 U.S. 864 (1983); 18B Wright & Miller, *Federal Practice and Procedure* § 4478, at 670-691 (2d ed. 2002 & Supp. 2009) [citations omitted].  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "[A] strong policy favoring finality impels [the Court] to exercise the power to review [prior] rulings only sparingly."  *Sanchez*, 35 F.3d at 677 [internal quotation marks and citation omitted].

## III.    ANALYSIS

As an initial matter, the Court finds that, even when construed liberally, Plaintiffs' motion for reconsideration is based only on the third of the three above-described grounds (i.e., a purported need to correct a clear error of law or to prevent manifest injustice).  The Court makes this finding based on the fact that the thrust of each of the arguments asserted in Plaintiffs' memorandum of law and reply memorandum of law regards the prevention of "manifest

injustice." (*See* Dkt. No. 44, at 1, 6-8; Dkt. No. 47, at 1-4.)  The Court makes this finding based also on the fact that (1) there has been no intervening change of controlling law since the Court issued its Decision and Order on March 30, 2010, and (2) Plaintiffs have not introduced, in support of their motion, evidence that was unavailable to them when they opposed Defendants' motion for summary judgment on May 4, 2009.[1]

Turning to Plaintiffs' various "manifest injustice" arguments, after carefully considering the matter, the Court concludes that there exists no clear error of law or manifest injustice with regard to Part III.C. of the Court's Decision and Order of March 30, 2010.  The Court reaches this conclusion for three reasons.

First, contrary to Plaintiffs' argument in their motion for reconsideration,[2] they did not address, on pages 15 through 24 of their memorandum of law in opposition to Defendants' motion for summary judgment, Defendants' argument that, *under the applicable statute of limitations*, Plaintiffs' breach-of-contract claims should be dismissed to the extent they sought

---

[1]     The Court notes that, in support of their motion for reconsideration, Plaintiffs offer the affidavit of Daniel J. Peterson, an Account Manager in the Legal Collections Department of CNA Insurance Companies.  (Dkt. No. 45.)  The affidavit, which is eight pages in length and attaches five pages of exhibits, is dated April 13, 2010.  (*Id.*)  While the affidavit is "new," no reason exists for the Court to believe that the information contained in it was not available to Plaintiffs when they opposed Defendants' motion for summary judgment on May 4, 2009.  For example, the Court notes that Mr. Peterson adduced a twelve-page affidavit, and approximately 126 pages of exhibits, as part of Plaintiffs' opposition to Defendants' motion for summary judgment on May 4, 2009.  (Dkt. No. 38, Attach. 4-6.)  The Court notes also that Mr. Peterson's deposition transcript (a portion of which was attached as an exhibit to his affidavit of April 13, 2010) was in Plaintiffs' possession on May 4, 2009.  (*Compare* Dkt. No. 38, Attach. 3, at 10-16 *with* Dkt. No. 45, Attach. 2, at 3-4.)

[2]     (Dkt. No. 44, at 4 [attaching page "1" of Plfs.' Memo. of Law].)

monies that became due in 1998, 1999 and 2000 under the Guaranteed Cost Policies.[3]  Rather, in

those nine pages, Plaintiffs address the Guaranteed Cost Policies only in a footnote.  (Dkt. No.

38, at 15-16, n.3.)  Furthermore, in that footnote, Plaintiffs do not dispute that the claims in

question were barred, under the *law*, by the applicable statute of limitations (N.Y. C.P.L.R. §

213).  (*Id*.)[4]  Rather, Plaintiffs argue merely that the claims in question should not be dismissed,

based on (nebulous) principles of *equity*.  (*Id*.)[5]  In support of this argument, Plaintiffs do not cite

any case law, nor do they even identify the particular recognized equitable statutory exception

upon which they rely; rather, they merely argue (without offering any supporting record

citations) that Defendants have not suffered any prejudice as a result of the untimely filing of

Plaintiffs' Complaint, and that Defendants themselves are guilty of "bad faith."  (*Id*.)

          As an initial matter, the Court finds that this oblique, fleeting, and unsupported response

to Defendants' well-supported argument constitutes a failure to respond to that argument

pursuant to Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, lightening the

burden that Defendants must satisfy to prevail on this aspect of their motion for summary

judgment.  (*See* Dkt. No. 41, at 11-12 & n.6.)  In any event, even if the Court were to deem

Defendants' argument to have been contested by Plaintiffs, and the Court were to subject that

---

          [3]          (Dkt. No. 34, Attach. 31, at 17-18 [attaching pages "14" and "15" of Defs.'
Memo. of Law].)

          [4]          Indeed, in the text above the footnote in question, Plaintiffs expressly "concede[]
that the 1998 and 1999 Adjustments were billed more than six years prior to the filing of the
Complaint" and thus were "outside of the applicable statute of limitations."  (Dkt. No. 34, Attach
31, at 18 [attaching page "15" of Defs.' Memo. of Law].)

          [5]          Specifically, Plaintiffs argue that "[e]quity requires that [Defendants'] motion be
denied as to the 1998 and 1999 Adjustments and the audit premiums for the Guaranteed Cost
Policies."  (*Id*.)

4

argument to the more rigorous analysis appropriate for contested motions, the Court would again

conclude that the claims in question were barred by the applicable statute of limitations.[6]

Second, to the extent that Plaintiffs argue (in their motion for reconsideration) that Daniel

J. Peterson's original affidavit (of May 4, 2009) evidenced Plaintiffs' oblique and fleeting

challenge described above, that argument misses the point.[7]  It is not the Court's duty to *sua*

*sponte* sift through a non-movant's record evidence for genuine issues of material fact.[8]  Rather

than being "mechanical" in nature, as Plaintiffs suggest, this widely accepted rule is soundly

based on a careful balancing of fairness to both movants and non-movants, as well as the

practical realities faced by trial courts having to decide complex motions presented to them.  The

Court notes that, here, Plaintiffs' record evidence consisted of some 251 pages of documents.

(Dkt. No. 38, Attach. 2-6.)  If Plaintiffs wanted Paragraphs 26 to 36 of Mr. Peterson's affidavit to

be considered by the Court in light of their challenge described above, they should have cited to

those pages in the relevant portion of their opposition memorandum of law.  In any event, the

Court finds that the relevant portions of Mr. Peterson's original affidavit, which address the

amounts owed on the Guaranteed Cost Policies and the calculation of audit premiums, have no

---

[6]     The Court notes that, in their memorandum of law in opposition to Defendants' motion for summary judgment, Plaintiffs do *not* establish, or even argue, that the statute of limitations should be tolled for a specific period of time due to (1) continuous misrepresentations made by Defendants, or acts of fraudulent concealment by Defendants, following the events giving rise to the claims in question, and (2) the lack of a reasonable basis for Plaintiffs to suspect the wrong, despite their exercise of due diligence to investigate the matter.

[7]     (Dkt. No. 44, at 4, 9 [attaching pages "1" and "6" of Plfs.' Memo. of Law].)

[8]     *See Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *4, 18 & n.9 (N.D.N.Y. June 20, 2008) (Hurd, J. adopting Lowe, M.J.) (finding that "the Court has no duty to *sua sponte* scour the 209 pages that comprise Plaintiff's 'affidavit and exhibits' for proof of a dispute of material fact") [citations omitted].

bearing on the fact that Plaintiffs first provided Defendants with audit documents regarding certain Guaranteed Cost Policies in 1999 and 2000–more than six years before the date on which Plaintiffs filed this action.[9]

Third, the Court rejects Plaintiffs' argument that Defendants cannot receive a credit "where debits were not paid."  (Dkt. No. 44, at 9-11 [attaching pages "6" through "8" of Plfs.' Memo. of Law].)  As an initial matter, Plaintiffs' did not, in their opposition memorandum of law, address Defendants' argument regarding their entitlement to the credit in question.  (*See generally* Dkt. No. 38 [Plfs.' Opp. Memo. of Law].)[10]  As a result, again, Defendants' burden was lightened with respect to this argument.[11]  In any event, even if the Court were inclined to consider this late-blossoming argument by Plaintiffs, the Court would be unpersuaded by it.

---

[9]     The Court notes that the audit invoice figures (concerning certain Guaranteed Cost Policies) that Defendants received in 1999 and 2000, which were not contested by Defendants upon receipt in 1999 and 2000, were substantively the same as the audit documents that Plaintiffs provided in the invoice of August 19, 2004.  (*Compare* Dkt. No. 34, Attach. 21, at 2-5, *with* Dkt. No. 34, Attach. 29, at 4.)  The Court notes also that the audit invoice figures (concerning certain Guaranteed Cost Policies) that Defendants received in 1999 and 2000 indicated the "amount due."  (*See, e.g.,* Dkt. No. 38, Attach. 3, at 13 [Peterson Dep. Tr., noting that an audit is performed within twelve months of the inception of the Guaranteed Cost Policy, and that, after the audit is performed, it is invoiced].)

[10]     The Court notes that it rejects Plaintiffs' so-called "mirror image argument," pursuant to which Plaintiffs' counsel argues that Plaintiffs effectively responded to Defendants' offset argument by arguing that Defendants had incurred a debt to Plaintiffs.  (Dkt. No. 44, at 5 [attaching page "2" of Plfs.' Memo. of Law].)  Generally, whether an underlying debt is owed is an issue distinct from whether that underlying debt should be offset by a credit.  Moreover, here, Plaintiffs' argument that Defendants owed them $98,919 under the Guaranteed Cost Policies was based merely on their argument that the statute of limitations should not be applied based on (unidentified) principles of equity.  Plaintiffs' argument in no way challenged Defendants' claim to an offset.  Indeed, it implicitly took the amount to be offset into consideration, in arriving at the amount of $98,919.

[11]     The Court notes that Defendants met this burden.  (*See* Dkt. No. 34, Attach. 31, at 17-18 [attaching pages "14" and "15" of Defs.' Memo. of Law].)

Plaintiffs' argument is unsupported by any citations to case law or contractual language. (Dkt. No. 44, at 9-11 [attaching pages "6" through "8" of Plfs.' Memo. of Law].)  Moreover, as Defendants' explain in their memorandum of law in opposition to Plaintiffs' motion for reconsideration,[12] the credit in question was calculated by the Court using the method requested by Defendants in their motion for summary judgment, specifically, Plaintiffs' own formula, which collectively considered debits and credits arising under the Guaranteed Cost Policies. (*Compare* Dkt. No. 34, Attach. 31, at 17-18 [attaching pages "14" and "15" of Defs.' Memo. of Law] *with* Dkt. No. 41, at 11-12 [Court's Decision and Order of March 3, 2010].)  Simply stated, the credit in question is not against unpaid debts, as argued by Plaintiffs; rather, the credit is the result of an amount overpaid and due to Defendants (specifically $98,348, pursuant to Guaranteed Cost Policy Number WC166798824) minus an amount potentially owed by Defendants in this action (specifically, $7,295, pursuant to Guaranteed Cost Policy Numbers GL166779450 and WC191277207).

Finally, some clarification may be necessary regarding the Court's use of the term "credit" in its Decision and Order of March 3, 2010.  The Court used the term "credit" simply because Defendants used that term in their motion for summary judgment.  However, the referenced amount of $91,063 might be more accurately characterized as an "offset" against any amount owed by Defendants in this action.  That was what the Court construed to be Defendants' intention in their motion for summary judgment.  (Dkt. No. 34, Attach 31, at 18 (arguing that Defendants "should be awarded a credit in the amount of $91,063 *against Plaintiffs' remaining*

---

[12]     (*See* Dkt. No. 46, at 9-10 [attaching pages "6" and "7" of Defs.' Opp. Memo. of Law].)

*claims in Count Two of the Complaint*") [emphasis added].  Furthermore, that was the Court's

intention in its Decision and Order of March 3, 2010.  (Dkt. No. 41, at 12 [explaining term

"credit" by using term "offset"].)  The Court notes that, in their Answer, Defendants did not

assert a counterclaim independently seeking this amount.  (Dkt. No. 13.)

For each of these reasons, Plaintiffs' request for reconsideration is denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for reconsideration (Dkt. No. 43) is **DENIED**.

Dated: May 20, 2010
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge